RECEIVED

APR 1 1 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| PEGGY J. CHAMP | CIVIL ACTION NO. 12-2722 |
| versus | JUDGE TOM STAGG |
| DONALD W. MALRAY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by Donald W. Malray ("Malray"), Roger L. Smith ("Smith"), Evlanteike T. McDaniel ("McDaniel"), Willie Fred Knowles ("Knowles"), and the Town of Homer ("Homer") (collectively "the defendants")[1], seeking dismissal of all claims asserted by the plaintiff, Peggy J. Champ ("Champ"). See Record Document 28. For the reasons stated herein, the defendants' motion is **GRANTED**.[2]

---

[1] At all relevant times, all of the individually named defendants were officers with the Homer Police Department. See Record Documents 6 and 31.

[2] Also pending before the court is a motion in limine by the defendants. See Record Document 40. Because the court is granting the defendants' motion for summary judgment, the defendants' motion in limine is **DENIED AS MOOT**.

## I. BACKGROUND

Champ filed the instant lawsuit against the defendants on October 18, 2012, alleging claims under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, the Louisiana Constitution, and Louisiana law. See Record Document 1. Champ's lawsuit arises from a search of her home that occurred in the early morning hours of October 18, 2011. See id. Champ alleges that the search warrant obtained by the officers who performed the search was facially defective and was not supported by probable cause, thereby rendering the search of her home warrantless and in violation of her rights under both the federal and state constitutions as well as federal and state law. See id.

The events that led to the search of Champ's home on October 18, 2011, began approximately one month earlier. On September 21, 2011, it is alleged that Champ's son, Jasmine "J.J." Curry ("J.J.") fired a weapon—believed to be an AK-47 automatic rifle—at Christopher Willis ("Willis"). See Record Document 29, Ex. 1. Knowles and another officer, Thomas Davis ("Davis"), were on a nearby call when they heard gun shots and were dispatched to North 4th Street. Willis identified J.J. as the shooter and told the officers that J.J. was in front of Champ's house when he fired the weapon. The officers went to Champ's home, believing it to be J.J.'s residence, and Champ told them that J.J. was not there. See id., Exs. 1 and 7. An arrest warrant was

issued for J.J. on September 23, signed by Judge Jenifer Clason ("Judge Clason"), on the charge of attempted second degree murder. See id., Ex. 2.

In the weeks that followed, the defendants began receiving tips that J.J. was staying at Champ's house and possibly hiding weapons there. See id., Ex. 6 at 28, Ex. 7 at 37-39, and Ex. 10 at 13. Malray prepared an affidavit for a search warrant to search Champ's house, declaring that he had received information that J.J. was living at the house. See id., Ex. 3. Additionally, the affidavit sought permission to seize "any and all bullets, projectiles, weapons or pistols, handguns, all or any cell phone that may belong to [J.J.], any clothing that may have been used in the commission of the crime that occurred on September 21, 2011." Id. Malray also prepared a search warrant, which sought to seize "any and all items in reference to the shooting that took place on September 21, 2011," then specifically listed "any bullets, projectiles, pistols, hand guns or clothing." Id., Ex. 5. Both the affidavit and search warrant were signed by Judge Clason on October 17, 2011, at 5:53 p.m. See id., Exs. 3 and 5.

After the affidavit and search warrant were signed on October 17, Malray directed Smith to organize a group of officers to execute the search warrant early the next morning. See id., Ex. 8 at 14-16. All of the defendants participated in the execution of the search warrant. Around 4:00 a.m. on October 18, the officers were briefed about the execution of the warrant. Malray spoke to the officers about J.J.

3

having an outstanding arrest warrant for second degree murder for the September 21 incident. See id., Ex. 6 at 82, Ex. 8 at 20-21, and Ex. 10 at 24-25.

The execution of the search warrant was documented on video from two different officers' points of view. See id., Ex. "Roger Smith, DVD Vidmic" (Oct. 18, 2011)(hereinafter "Smith DVD") and Ex. "Thomas Davis, DVD Vidmic" (Oct. 18, 2011)(hereinafter "Davis DVD"). The officers arrived at Champ's house shortly after 5:00 a.m. on October 18. See id., Ex. Smith DVD at 2:16 and Ex. Davis DVD at 2:03. Due to their concerns that J.J. might be inside the house and might be armed, the officers decided to use a battering ram to open the front door. Officer Frank Evans was selected to use the battering ram. See id., Ex. 8 at 21, Ex. 10 at 24. An officer shouted "search warrant, police" immediately before the first of two shots to the front door from the battering ram. See id., Ex. Smith DVD at 3:09 and Ex. Davis DVD at 2:55. Champ was found in a bedroom, handcuffed, and escorted outside. According to Champ, she had been asleep, was taken outside barefoot and wearing only a nightgown and underclothes, and it was raining. See Record Document 1. The officers completed a search of the house, finding no other persons inside and seizing no items. See Record Document 29, Ex. Smith DVD and Ex. Davis DVD.

The instant lawsuit resulted, in which Champ makes various claims under the federal and state constitutions as well as federal and state law. The complaint lists

4

fifteen different alleged violations of Champ's rights by the defendants. See Record Document 1. Specifically, Champ alleges that the defendants entered her home without knocking and announcing, that the search warrant was facially invalid because it does not particularly describe items to be seized, the defendants lacked probable cause to perform the search, and the defendants' actions were not objectively reasonable or in good faith. See id. The defendants filed the instant motion for summary judgment on November 21, 2013, seeking dismissal of all of Champ's claims. See Record Document 28. Champ filed an opposition, and the defendants filed a reply. See Record Documents 36 and 37.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

5

case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.  Qualified Immunity.**

Qualified immunity shields government officials from liability in their performance of discretionary functions, unless their conduct violated a clearly established constitutional right. See Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009). "Once raised, a plaintiff has the burden to rebut the qualified immunity defense . . . . We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th

6

Cir. 2005). The qualified immunity defense presents a two-part inquiry: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." <u>Ontiveros</u>, 564 F.3d at 382. The court may address either part of the two-part inquiry first. See <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808 (2009).

### C. The Search Warrant Satisfies All Requirements Of The Fourth Amendment.

Champ's claims that the defendants violated her constitutional rights depend on her argument that the warrant was invalid, in which case the defendants performed a warrantless search of her home. The Fourth Amendment provides in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Champ contends the warrant in this case was not supported by probable cause and did not particularly describe the things to be seized, thereby violating two of the four requirements under the Fourth Amendment.

Turning first to the particularity requirement, the court is not persuaded by Champ's arguments. The portion of the search warrant that lists the things to be

seized reads: "Affiant wishes to seize any and all items in reference to the shooting that took place on September 21, 2011, in the Town of Homer, Parish of Claiborne. Affiant wishes to seize any bullets, projectiles, pistols, hand guns or clothing." Record Document 29, Ex. 5. Although the first sentence contains the broad phrase "any and all items," the second sentence particularly describes a number of items to be seized. Additionally, the warrant references the affidavit prepared by Malray, which sought to seize "any and all bullets, projectiles, weapons or pistols, handguns, all or any cell phone that may belong to [J.J.], [and] any clothing . . . ." Id., Ex. 3. Champ's reliance on Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284 (2004) is misplaced. In Groh, the portion of the search warrant relating to property to be seized listed a description of the suspect's home rather than any items, and the warrant failed to reference an itemized list in the application. See Groh, 540 U.S. at 554-55, 124 S. Ct. at 1288. The search warrant in this case, by contrast, specifically lists a number of items to be seized and references the list contained in Malray's affidavit. Therefore, the search warrant satisfies the particularity requirement.

The remaining question, then, is whether the search warrant was supported by probable cause. Generally, great deference is given to the finding of the judge who signed the warrant and found that probable cause existed. See Messerschmidt v. Millender, -- U.S. --, 132 S. Ct. 1235, 1245 (2012); United States v. Leon, 468 U.S.

8

897, 914, 104 S. Ct. 3405, 3416 (1984). However, the shield of qualified immunity does not apply if "'it is obvious that no reasonably competent officer would have concluded that a warrant should issue[.]'" Messerschmidt, -- U.S. at --, 132 S. Ct. at 1245 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986)). For instance, deference to the judge may be unwarranted if the affidavit supporting the warrant "does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" Leon, 468 U.S. at 915, 104 S. Ct. at 3416 (quoting Ill. v. Gates, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332 (1983)).

Champ has failed to show that the search warrant at issue was not supported by probable cause. The affidavit prepared by Malray mentioned a "crime that occurred on September 21, 2011" and later stated that J.J. "was identified by the victim and a co defendant as being the one that shot up rounds near the intersection of North 4th street and 237 ½ North 4th . . . ." Record Document 29, Ex. 3. The search warrant application itself referenced "the shooting that took place on September 21, 2011 in the Town of Homer . . . ." Id., Ex. 5. The search warrant was signed by Judge Clason, who also signed the arrest warrant for J.J. and knew the details of the crime referenced in the affidavit and search warrant. Moreover, Champ has not pointed to any evidence that would indicate probable cause was lacking.

The only other challenge that Champ made to the search warrant itself was that it allowed the officers to execute the warrant at night, in violation of Federal Rule of Criminal Procedure 41 and Louisiana Code of Criminal Procedure article 162. It is unclear to the court why the former rule should apply to a search warrant issued by a state court judge on application of state law enforcement officers. Additionally, the latter rule does not appear to prohibit executing search warrants at night. Nevertheless, both Federal Rule of Criminal Procedure 41 and Louisiana Code of Criminal Procedure article 163 state that a nighttime execution can be expressly authorized in the warrant. See Fed. R. Crim. P. 41(e)(2)(A)(ii); La. Code Crim. P. art. 163(B). The search warrant expressly permitted those executing it to "search during the day and night . . . continuing through the night or next day . . . ." Record Document 29, Ex. 5. Having found that the search warrant was supported by probable cause, satisfied the particularity requirement of the Fourth Amendment, and was otherwise valid in form, the court finds that Champ cannot claim the search of her home on October 18, 2011, was a warrantless search.

D. **The Defendants' Remaining Actions Did Not Violate Any Clearly Established Constitutional Right Or Rights Under Federal Or State Law.**

Champ's remaining allegations against the defendants relate to the actual execution of the search. Specifically, Champ claims her rights were violated because

10

the defendants entered without knocking and announcing (or, if they did, they did not wait a sufficient time after knocking and announcing to enter), failed to present a copy of the search warrant at the beginning of the search, and did not have a reasonable belief that any dangerous persons were inside the home or that any evidence was in danger of being destroyed. See Record Document 1. The court finds no merit in any of these arguments.

Champ's contention that the defendants did not knock and announce is contradicted by the video recordings of the search. Before any officers entered Champ's house, an officer can be heard announcing "search warrant, police." See Record Document 29, Ex. Smith DVD at 3:09 and Ex. Davis DVD at 2:55. Moreover, the requirement to knock and announce may not have applied here because the officers expected that J.J.—an individual suspected of firing an AK-47 rifle at a car less than one month prior with a pending arrest warrant for second degree murder—might be inside the house. See Hudson v. Michigan, 547 U.S. 586, 589, 126 S. Ct. 2159, 2163 (2006)(noting the knock and announce rule does not apply when there is a threat of physical violence). Consequently, Champ cannot prove a violation of her rights on this basis.

The court also fails to find a violation of any rights in the allegation that the officers did not present Champ with a copy of the search warrant at the outset of the

11

search. As discussed several times herein, the officers believed that J.J. was living at the house and that he was armed and dangerous. As soon as Champ was found within the house at the outset of the search, she was handcuffed and escorted outside so that the officers could finish searching the house. Temporarily detaining an individual until a search is completed is permissible if done to minimize the risk of harm to the officers. See Bailey v. United States, -- U.S. --, 133 S. Ct. 1031, 1037-38 (2013); Michigan v. Summers, 452 U.S. 692, 702-03, 101 S. Ct. 2587, 2594 (1981). Soon after their search of the house was completed, the defendants provided Champ with a copy of the search warrant.

Finally, the court finds that the defendants did have reason to believe that dangerous persons might be inside the house and evidence may be in danger of destruction. In the weeks following the shooting, the defendants began receiving tips that J.J. was staying at Champ's house and possibly hiding weapons there. See Record Document 29, Ex. 6 at 28, Ex. 7 at 37-39, and Ex 10 at 13. "There is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible." United States v. Blount, 123 F.3d 831, 836 (5th Cir. 1997). Based on the tips they received, the defendants had a reasonable belief that exigent circumstances existed, justifying their actions during the search. Therefore,

Champ has failed to provide sufficient evidence of a violation of any of her rights under federal or state law.

### E. Champ Has Not Established Municipal Liability Of Homer.

In order to state a valid claim against a municipality, a plaintiff is required to show the violation of some right by actions performed under an official policy. See Valle v. City of Houston, 613 F.3d 536, 541 (5th Cir. 2010). The plaintiff must identify a policy that was the "moving force" behind the acts at issue and identify some policymaker with actual or constructive knowledge of the policy. See id. at 541-42. Champ has merely stated conclusory allegations against Homer, failing to identify any particular policy or custom that the remaining defendants were purportedly acting in accordance with when they searched her home. Conclusory allegations are insufficient to avoid summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Thus, Homer is entitled to summary judgment as to Champ's claims against it.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is **GRANTED** and all of Champ's claims against Malray, Smith, McDaniel, Knowles, and Homer are **DISMISSED WITH PREJUDICE.**[3]

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this, the 10th day of April, 2014.

_____
JUDGE TOM STAGG

---

[3] The court notes that this ruling does not affect Champ's claims against defendant Frank Evans, who is appearing pro se and has not joined the defendants' motion.